**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**ILLINOIS EXTENSION PIPELINE
COMPANY, L.L.C.**

**Plaintiff,**

**v.**

**DANIEL SUMMANN and RUTH E.
SUMMANN,**

**Defendants.**                                            **No. 14-1003-DRH-PMF**

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

**I.      Introduction**

Pending before the Court is plaintiff Illinois Extension Pipeline

Company, L.L.C.'s ("IEPC") motion for summary judgment (Doc. 18)

pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56 against defendants Daniel

Summann and Ruth E. Summann (hereinafter "defendants"). Defendants

filed an opposing response (Doc. 21) to which IEPC replied (Doc. 22). For

the reasons discussed herein, IEPC's motion for summary judgment (Doc.

18) is granted.

## II.     Background and Allegations

IEPC (formerly known as Enbridge Pipelines (Illinois) L.L.C.) filed its Complaint in this Court on September 16, 2014, based on diversity of citizenship and an amount in controversy in excess of $75,000, exclusive of interest and costs, pursuant to 28 U.S.C. § 1332. (Doc. 2). In its complaint, IEPC contends that it is the current owner of pipeline right-of-way grants that run across two tracts of land (Tracts 12-133 and 12-134) owned by defendants in Fayette County, Illinois. (Doc 2 ¶¶ 5-6). Daniel Summann owns Tract 12-133 and Ruth E. Summann owns Tract 12-134. (Doc. 2 ¶ 5). Defendants are successors to the grantors of these right-of-way grants, hereinafter referred to as the "1939 Luxor Easements." (Doc. 2 ¶ 6). The 1939 Luxor Easements are part of a series of easements obtained by IEPC's predecessors in 1939 for the installation of a pipeline commonly referred to as the "Luxor Line." (Doc. 2 ¶ 6).

IEPC is currently constructing a new underground pipeline for the transportation of crude oil in interstate commerce, referred to as the "Southern Access Extension (SAX) Pipeline." (Doc. 2 ¶ 7; Doc. 18 P1). IEPC contends that this project depends upon its exercise of the rights conveyed by the 1939 Luxor Easements. (Doc. 2 ¶ 7). Both of the 1939 Luxor Easements contain language that the owner of the easement has "the right to lay, operate and maintain, adjacent to and parallel with the first, a second pipe line…." (Doc. 2 Ex. A, B). According to IEPC's complaint,

defendants dispute the validity of IEPC's rights under the 1939 Luxor Easements and contend that IEPC does not have any right to lay the SAX Pipeline across Tracts 12-133 and 12-134. (Doc. 2 ¶ 8). Therefore, IEPC's complaint seeks declaratory relief, pursuant to 28 U.S.C. § 2201, affirming that the 1939 Luxor Easements are valid and enforceable according to their terms and give IEPC all of the rights set forth therein. (Doc. 2, Count I Prayer for Relief).

In recent years there has been extensive litigation surrounding IEPC's Luxor Line easements. In every case, district courts, including the undersigned, have consistently concluded that IEPC's easement rights continue to be valid and enforceable.[1] The Seventh Circuit Court of Appeals affirmed several of these decisions in 2011. *See Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602 (7th Cir. 2011). Thus, no court has ever found that IEPC's Luxor Line easement rights are not still valid and enforceable.

IEPC also pleads a second Count in its Complaint, seeking preliminary and permanent injunctive relief against defendants to enjoin them and anyone acting in concert with them from any and all interference with IEPC's exercise of its rights under the 1939 Luxor Easements. (Doc. 2,

---

[1] Litigation surrounding the IEPC Luxor Line in the Southern District of Illinois, Central District of Illinois, and on appeal with the Seventh Circuit, held the easements to be valid in each of the following cases: *Enbridge Pipelines (Illinois) L.L.C. v. Burris*, No. 08-cv-697 (S.D. Ill. 2010); *Enbridge Pipelines (Illinois) L.L.C. v. Portz*, No. 08-cv-841(S.D. Ill. 2010); *Enbridge Pipelines (Illinois) L.L.C. v. Hortenstine*, No. 08-cv-842 (S.D. Ill. 2010); *Enbridge Pipelines (Illinois) L.L.C. v. Preiksaitis*, 2:08-cv-02215-HAB-DGB (C.D. Ill. Feb. 1, 2010); *Kelly v. Enbridge (U.S.) Inc.*, No. 07-3245, 2008 WL 2123755 (C.D. Ill. May 16, 2008).

Count II Prayer for Relief). IEPC contends that on August 14, 2014, surveyors employed by IEPC began locating and staking the Luxor Line right-of-way across Tracts 12-133 and 12-134. (Doc. 2 ¶ 14). In response, defendant Daniel Summann ordered the surveyors to leave and remove all the stakes they had already placed. (Doc. 2 ¶ 14). IEPC argues that based on the Seventh Circuit's decision in *Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602 (7th Cir. 2011), IEPC has a substantial likelihood of success on the merits. (Doc. 2 ¶ 15). And because it contends it will suffer substantial and irreparable harm if defendants continue to interfere with its easement rights, IEPC seeks preliminary and permanent injunctive relief to prevent such harm. (Doc. 2 ¶ 16).

In response to IEPC's complaint, defendants initially filed a Motion to Dismiss (Doc. 11), which the undersigned denied on December 17, 2014. (Doc. 15). Defendants then filed their answer on December 30, 2014. (Doc. 16). Defendants admit that they are the current owners of Tracts 12-133 and 12-134. (Doc. 16 ¶ 5). Defendants admit that they dispute the validity or enforceability of the 1939 easement. (Doc. 16 ¶ 8). Defendants also admit, as to Count II, that they told individuals affiliated with IEPC to leave their property. (Doc. 16 ¶ 14). Defendants deny the majority of the other allegations in the complaint.

### III.    Subject Matter Jurisdiction

Before continuing on to the merits, the Court must determine whether it has subject matter jurisdiction over IEPC's claims. Defendants deny that the amount in controversy in this matter exceeds $75,000.00, exclusive of interest and costs, and thus denies that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (Doc. 16 ¶¶ 3-4). And although defendants admit that they are citizens of Illinois (Doc. 16 ¶ 2), defendants contend that they have insufficient knowledge of IEPC's citizenship. (Doc. 16 ¶ 1).

IEPC is a limited liability company,[2] and has provided proof of the citizenship of its members through the affidavit of Joel W. Kanvik, the Assistant Secretary of Enbridge Energy Company, Inc. (one of the members of IEPC) who has knowledge of the ownership structure of IEPC. (Doc. 18-1). None of those members are citizens of Illinois. Therefore IEPC has established a diversity of citizenship between itself and defendants. *See Dausch v. Rykse*, 9 F.3d 1244, 1245 (7th Cir. 1993) (explaining that "an affidavit with respect to the citizenship of the parties" may eliminate any doubts about diversity).

With regards to the amount in controversy, the Seventh Circuit has affirmed that IEPC has satisfied the amount in controversy requirement with respect to similar disputes over the validity of its Luxor Line

---

[2] As IEPC correctly notes, the citizenship of a limited liability company is determined by the citizenship of each of its members. *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co.*, 759 F.3d 787, 788 (7th Cir. 2014).

easements. *Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602, 605-06 (7th Cir. 2011). In that case, Enbridge presented affidavit evidence that to construct the pipeline around the disputed properties "would cost at least $75,000, per property, in pipe alone, ignoring construction costs." *Id.* at 605. The Seventh Circuit rejected defendants' argument that Enbridge could instead acquire a new easement from the defendants for less than $75,000, reasoning that if it would cost Enbridge more than $75,000 to construct around defendants' properties, defendants would demand at least $75,000 for the new easement. *Id.* at 605-06. Here, IEPC has provided similar evidence, through the affidavit of Jerrid A. Anderson, the Project Director for the SAX Pipeline project. (Doc. 18-2). IEPC has sufficiently established that the amount in controversy in this case exceeds $75,000. Therefore, this Court has subject matter jurisdiction over this case.

### IV.   <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment, which shall be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; *see Winsley v. Cook Cnty.*, 563 F.3d 598, 602–03 (7th Cir. 2009). In order to survive summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348,

1356, 89 L. Ed. 2d 538 (1986). Instead, the nonmovant "must establish some genuine issue for trial such that a reasonable jury could return a verdict in her favor." *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012). An issue of material fact exists only when the fact at issue is outcome determinative; "[i]rrelevant or unnecessary factual disputes do not preclude summary judgment." *Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). In ruling on a motion of summary judgment, the Court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences" in that party's favor. *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000).

## V.   Analysis

IEPC seeks summary judgment in its favor as to Count I in its Complaint. (Doc. 18). Count I seeks declaratory relief affirming that the 1939 Luxor Easements are "valid and enforceable according to their terms" and give "IEPC all of the rights set forth therein." (Doc. 2, Count I Prayer for Relief). Therefore, in order to grant summary judgment, the Court must determine whether there is any material issue of fact relevant to the validity or enforceability of those easements according to their terms.

As an initial matter, in their answer defendants demand strict proof as to IEPC's allegation that it is the successor in interest to the 1939 Luxor Easements. (Doc. 16 ¶ 6). The Court finds that IEPC has provided such proof in its motion for summary judgment (Doc. 18) and the accompanying

affidavit of Barry A. Kendall, Senior Right-of-Way Title Agent for IEPC. (Doc. 18-3). Specifically, Mr. Kendall's affidavit explains that this Court has previously found that IEPC sufficiently established the chain of title on its 1939 Luxor Line easements running from The Texas-Empire Pipe Line Company ("Texas-Empire") to Enbridge Pipelines (Illinois) LLC ("Enbridge").[3] (Doc. 18-3). Mr. Kendall points out that there are two differences in the chain of title for Tracts 12-133 and 12-134. (Doc. 18-3 ¶ 4). First, as is clear from the face of the easements themselves, Central States Pipe Line Company was the original grantee for these two easements, but subsequently granted these easements to Texas-Empire. (Doc. 18-3 ¶ 4; Doc. 2 Ex. A, B). Second, in July 2014, Enbridge changed its name to IEPC. (Doc. 18-3 ¶ 4). Defendants do not refute any of this in their response. (Doc. 21). Thus there is no dispute that IEPC is the successor in interest to the 1939 Luxor Easements.

Regarding the validity and enforceability of the 1939 Luxor Easements, as noted above the Seventh Circuit has affirmed a series of district court judgments finding that IEPC's 1939 easements are still valid and enforceable. *Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602 (7th Cir. 2011). In that case, the Seventh Circuit rejected the defendants'

---

[3] The undersigned presided over these cases and found that Enbridge had established proper chain of title. *Enbridge Pipelines (Illinois) LLC v. Burris*, No. 08-cv-0697-DRH, 2010 WL 1416019 (S.D. Ill. March 31, 2010); *Enbridge Pipelines (Illinois) LLC v. Portz*, No. 08-cv-841 (S.D. Ill.); *Enbridge Pipelines (Illinois) LLC v. Hortenstine*, No. 08-cv-842, 2010 WL 3038529 (S.D. Ill. Aug. 3, 2010); *all affirmed by Enbridge Pipelines (Illinois) L.L.C. v. Moore*, 633 F.3d 602 (7th Cir. 2011).

argument that Enbridge had "abandoned" its easements by failing to maintain the Luxor Line pipeline. *Id.* at 606-07. The court reasoned that abandonment "is a deliberate act" and that failing to maintain the pipeline did not prove an intent to abandon the easements. *Id.*

The defendants here make a similar argument. In their answer, defendants contend that because a portion of the pipeline on their property has been unearthed, and because IEPC failed to remove the exposed pipeline upon defendants' request, IEPC "elected…to abandon" the pipeline on defendants' property, "thus terminating its right-of-way grant and easement rights." (Doc. 16 ¶ 6). The Court finds that the Seventh Circuit's decision in *Enbridge Pipelines (Illinois) L.L.C. v. Moore* controls and that defendants have failed to allege any "deliberate act" that IEPC or its predecessors have taken to abandon the easements in this case. The 1939 Luxor Easements in this case are in essence indistinguishable from the easements previously upheld. (Doc. 2 Ex. A, B). Indeed, in their answer defendants do not even attempt to distinguish the easement at issue in this case from those other easements, but simply deny that the enforceability of this particular easement has ever been litigated. (Doc. 16 ¶ 9). The Court agrees with IEPC that refusing to remove the pipeline upon request, if it evinces any intent, more likely shows an intent *not* to abandon the pipeline rather than an intent *to* abandon it. (Doc. 18 P12). Defendants'

"abandonment" argument thus fails to establish a material issue of fact that would preclude summary judgment.

In their response to IEPC's motion for summary judgment, defendants raise a new argument, contending that because a portion of the pipeline is exposed, IEPC and its predecessor have been "in breach of the easement terms…for decades" such that there is a material issue of fact as to whether this breach invalidated IEPC's easement rights. (Doc. 21 P2). Defendants thus attempt to replace their "abandonment" defense with a breach of contract defense. There are a number of problems with this endeavor.

First, Federal Rule of Civil Procedure 8(c) requires defendants to raise all affirmative defenses in their responsive pleading. Fed.R.Civ.P. 8(c); *Castro v. Chicago Hous. Auth.*, 360 F.3d 721, 735 (7th Cir. 2004). Thus, the Seventh Circuit has "stated numerous times that if a defendant does not raise defenses at the time of filing an answer, those defenses are deemed waived." *Castro*, 360 F.3d at 735; *see also Venters v. City of Delphi*, 123 F.3d 956, 969 (7th Cir. 1997) ("[I]f Rule 8(c) is not to become a nullity, we must not countenance attempts to invoke such defenses at the eleventh hour, without excuse and without adequate notice to the plaintiff."). Therefore, "'[s]urprises' such as new arguments or defense theories propagated after the completion of discovery and filing of summary judgment are wisely discouraged." *Crest Hill Land Dev., LLC v. City of*

*Joliet*, 396 F.3d 801, 804 (7th Cir. 2005). Defendants surprise "breach of contract" defense, not raised in defendants' answer, is therefore waived.

Second, even if defendants had not waived this "breach of contract" defense by failing to include it in their answer, their argument would still not raise an issue of material fact sufficient to defeat summary judgment. The 1939 Luxor Easements clearly state that the pipelines are to be buried "so that they will not interfere with the cultivation of the land." (Doc. 2 Ex. A, B). On its face, then, IEPC will not have breached its agreement with defendants unless it pipelines interfere with the cultivation of defendants' land. As the photographs submitted by both IEPC and defendants demonstrate, the pipeline here comes out of the ground where it crosses a stream. (Doc. 21-2; 22-1 Ex. A). Defendants only evidence that this exposed portion constitutes a breach of the above provision comes from the affidavit of defendant Daniel Summann: "The pipeline interference [sic] with cultivation of the property." (Doc. 21-1 ¶ 7). This "bald assertion of the general truth of a particular matter," without "concrete facts establishing the existence of the truth of the matter asserted," is not sufficient to defeat a motion for summary judgment. *Hadley v. Du Page Cty.*, 715 F.2d 1238, 1243 (7th Cir. 1983). In other words, although the Court must draw all *reasonable* inferences from the facts in favor of the nonmoving party, where the nonmoving party "substantiates his allegations...on the basis of his one conclusory sentence in his affidavit," the Court cannot reasonably infer that

a material issue of fact exists as to that allegation. *Davis v. City of Chicago*, 841 F.2d 186, 189 (7th Cir. 1988). Thus, defendants have failed to establish any material issue of fact as to their belated breach of contract defense.

Because defendants have failed to establish any genuine issue of material fact as to whether IEPC's 1939 Luxor Easements are valid and enforceable according to their terms, the Court finds that IEPC is entitled to summary judgment as to the declaration sought in Count I of its Complaint. The Court notes that IEPC did not seek summary judgment on its claim for preliminary and permanent injunctive relief sought in Count II of its Complaint. (Doc. 2, Count II). As such, Count II remains pending before this Court.

## VI.   <u>Conclusion</u>

Accordingly, the Court **GRANTS** IEPC's motion for summary Judgment (Doc. 18) as to Count I in IEPC's Complaint (Doc. 2).  The Court **DECLARES** that the 1939 Luxor Easements applicable to Tracts 12-133 and 12-134 are valid and enforceable according to its terms and thereby give IEPC the rights set forth therein. Thus, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same at the close of the case. In light of this ruling, the Court **DENIES** as moot IEPC's Motion to Consolidate Cases (Doc. 20), IEPC's Motion to Strike the Declaration of

Daniel Summann (Doc. 23), and defendants' Emergency Motion for Preliminary Injunctive Relief (Doc. 25).

As Count II remains pending, the Court **SETS** this matter for Final Pretrial Conference on April 19, 2016 at 1:30 p.m.

**IT IS SO ORDERED.**

Signed this 17th day of February, 2016

Digitally signed by
Judge David R. Herndon
Date: 2016.02.17
10:06:48 -06'00'

**United States District Judge**